# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**SECURITIES AND EXCHANGE COMMISSION,**

        **Plaintiff,**

v.

**ERIC A. ALEXANDER,**

        **Defendant.**

_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges as follows:

### I.  INTRODUCTION

1. From no later than February 2014 until July 27, 2018, 1 Global Capital LLC ("1 Global" or "the Company") fraudulently raised more than $322 million from more than 3,600 investors nationwide in an unregistered securities offering. Defendant Eric A. Alexander served as 1 Global's Chief Financial Officer from October 2016 through August 2017. During that time, Alexander played a role in the fraud by, among other things, signing monthly investor account statements that he knew misrepresented the role of an accounting firm in auditing and verifying information in the statements, and manipulating 1 Global's contractually based management fee to artificially raise or lower investors' monthly rates of return.

2. 1 Global, a private, South Florida firm, used a network of sales agents to offer and sell unregistered securities to investors in no fewer than 42 states to fund its business of offering short-term financing to small and medium sized businesses. The Company, through its marketing materials distributed to sales agents and the sales agents themselves, promised investors a high-

return, low-risk investment in which 1 Global would use investor money to make short-term cash advances called Merchant Cash Advances ("MCAs") to businesses that could not obtain more traditional financing such as bank loans.

3. In reality, the Company used substantial investor funds for purposes other than the MCAs, including paying operating expenses and funding the luxury lifestyle of its founder, Chairman and CEO, Carl Ruderman. From February through August 2017 (part of the time he worked at 1 Global), Alexander helped the Company raise funds from investors by manipulating 1 Global's management fees to artificially increase or decrease the investors' rate of return depicted on investors' monthly account statements, and misrepresented that the Company had an independent auditor that had endorsed the Company's method of calculating investor returns.

4. Through his conduct, Alexander violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77q(a), and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5. The Commission seeks injunctive relief, a civil penalty, and an officer-and-director bar against Alexander.

## II.  DEFENDANT

5. Alexander, 42, is a resident of Miami Beach, Florida, and was 1 Global's CFO, from 2016 through August 2017. Alexander is a certified public accountant licensed to practice in Wisconsin.

## III.  JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e), and 78aa.

7.      This Court has personal jurisdiction over Alexander and venue is proper in the Southern District of Florida as Alexander resides in the District.  Moreover, Alexander signed 1 Global's false and misleading monthly investor account statements at Global's Hallandale Beach headquarters.

8.      Alexander, directly and indirectly, made use of the means and instrumentalities of interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV.  BACKGROUND

9.      According to its sales materials and website, 1 Global provided small and medium-sized businesses an alternative to borrowing money from traditional financial institutions.  The investment instruments investors signed provided that 1 Global would assign investors a percentage of numerous MCAs and would earn money from sharing in the profits derived from those MCAs.

10.     Although 1 Global purported to limit its offering to sophisticated or qualified investors, in reality the Company and its sales agents mass marketed the investment to the public through brochures, flyers, seminars, and meetings.  1 Global never checked to ensure that any of its investors were sophisticated.

11.     1 Global's marketing materials touted the investment as a safe and less risky alternative to traditional stock market investments, and routinely promised investors annual returns in the high single to low double digits.

12.     The Company and Ruderman made numerous material misrepresentations and omissions to investors, including how 1 Global would use investor funds, the fees it would charge investors, sending investors monthly account statements that overstated the values of investors'

accounts and their rates of returns, and the role of the outside accounting firm. In addition, Ruderman misappropriated at least $32 million to pay for his lavish personal expenses and to send to unrelated businesses in which he or his relatives had a beneficial interest.

13.   As a result of the Company and Ruderman's misuse and misappropriation of funds, 1 Global ran short of cash and filed for bankruptcy on July 27, 2018. The Company subsequently ceased operations.

## V.  ALEXANDER'S ROLE IN THE FRAUD

### A.  Manipulating the Value of Investor Accounts

14.   1 Global provided every investor with a monthly account statement that showed the MCAs in which it had placed the investor's funds, and the rate of return, among other things.

15.   The rate of return purportedly was calculated based on the merchant's repayment of the cash advances minus a contractually agreed to management fee between 1 Global and the investor. Investors could plainly see on these monthly statements how much their investment had allegedly increased in value, which directly correlated to the rate of return the statements told each investor he or she was allegedly earning.

16.   From no later than February 2017 through at least August 2017, Alexander signed the account statements knowing the rate of return was frequently a result of him manipulating 1 Global's management fees up or down each month. This had the effect of "smoothing" 1 Global investors' monthly rates of return, i.e., making them appear as if they were more consistent and less volatile than they actually were. Thus, investor account statements showed a contrived rate of return based on Alexander's manipulation of the management fees 1 Global applied.

### B.  False Claims About The Work Of An Accounting Firm

17.   The monthly account statements also misrepresented the role of a South Florida-

based accounting firm in 1 Global's finances.  Each investor's monthly account statement falsely claimed, "Our independent audit firm, **Daszkal Bolton L.L.P.**, has endorsed and agrees with the rate of return formula." [Emphasis in original].  However, Alexander, in his position as 1 Global's CFO, knew Daszkal Bolton never endorsed or agreed with 1 Global's rate of return formula, and that Daszkal Bolton never audited 1 Global's financial statements.

18.     While 1 Global did hire Daszkal Bolton, the firm's work was limited to drafting a set of agreed-upon procedures for evaluating investors' accounts.  Therefore, every account statement 1 Global sent to investors bearing Alexander's signature from February 2017 until approximately August 2017 containing the representation about Daszkal Bolton was false, which Alexander knew.  Alexander also knew that 1 Global sometimes showed sample account statements to prospective investors in its solicitation efforts.

## VI.  CLAIMS FOR RELIEF

### COUNT I

### Violations Of Section 17(a)(1) Of The Securities Act

19.     The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

20.     From no later than February 2017 through August 2017, Alexander, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or severely recklessly employed devices, schemes or artifices to defraud.

21.     By reason of the foregoing, Alexander violated, and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. §77q(a)(1).

## COUNT II

### Violations Of Section 17(a)(2) Of The Securities Act

22. The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

23. From no later than February 2017 through August 2017, Alexander, in the offer or sale of securities by any use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

24. By reason of the foregoing, Alexander violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. §77q(a)(2).

## COUNT III

### Violations Of Section 17(a)(3) Of The Securities Act

25. The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

26. From no later than February 2017 through August 2017, Alexander, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

27. By reason of the foregoing, Alexander violated, and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. §77q(a)(3).

## COUNT IV

### Violations Of Section 10(b) And Rule 10b-5(a) Of The Exchange Act

28. The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

29. From no later than February 2017 through August 2017, Alexander, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or severely recklessly employed devices, schemes, or artifices to defraud in connection with the purchase or sale of securities.

30. By reason of the foregoing, Alexander violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

## COUNT V

### Violations Of Section 10(b) And Rule 10b-5(b) Of The Exchange Act

31. The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

32. From no later than February 2017 through August 2017, Alexander, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or severely recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

33. By reason of the foregoing, Alexander violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.SC. §78j(b), and Exchange Act Rule 10b-5(b), 17 C.F.R. §240.10b-5(b).

## COUNT VI

### Violations Of Section 10(b) And Rule 10b-5(c) Of The Exchange Act

34. The Commission repeats and realleges Paragraphs 1 through 18 of this Complaint as if fully set forth herein.

35. From no later than February 2017 through August 2017, Alexander, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or severely recklessly engaged in acts, practices, and courses of business which have operated, or are now operating and will operate, as a fraud upon the purchasers of securities.

36. By reason of the foregoing, Alexander violated, and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. §240.10b-5(c).

## VII.  REMEDIES REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find the Defendant committed the violations alleged, and:

### A.  Permanent Injunctive Relief

Issue a Permanent Injunction enjoining Alexander from violating Section 17(a) of the Securities Act, and Section 10(b) and Rule 10b-5 of the Exchange Act.

### B.  Civil Penalties

Issue an Order directing Alexander to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

### C.  Officer and Director Bar

Issue an Order barring Alexander from serving as an officer or director of any public company pursuant to Section 20(e) of the Securities Act and Section 21(d) of the Exchange Act

and Section 305(b)(5) of the Sarbanes-Oxley Act.

|  |  |
|---|---|
| | Respectfully submitted, |
| April 11, 2022 | **Robert K. Levenson** <br> Robert K. Levenson, Esq. <br> Senior Trial Counsel <br> Florida Bar No. 0089771 <br> Direct Dial: (305) 982-6341 <br> Email: levensonr@sec.gov <br><br> Attorney for Plaintiff <br> **SECURITIES AND EXCHANGE COMMISSION** <br> 801 Brickell Avenue, Suite 1950 <br> Miami, Florida 33131 |